Matter of the Application of JOHN LYNCH for an Order Decreeing and Adjudging the Certificate of the Independent Nomination for Mayor of the City of Troy, N. Y., of Osman F. Kinloch as the Candidate of the Independent Citizens League at the General Election to be Held November 4, 1919, to be Insufficient, Invalid, Illegal and Null and Void.

(Supreme Court, Albany Special Term, September, 1919.)

Election Law, § 123 — defective authentication to certificate of independent nomination — excusable omissions — qualification of authenticating witness.

   Where authenticating witnesses to a certificate of independent nomination sign their names up and down the page per-

pendicular to the signatures of the electors instead of opposite thereto, the provisions of section 123 of the Election Law are not complied with.

The certificate in question contained 1,394 names. 1,278 signatures were required. 1,188 of the signatures were improperly witnessed. There being no proof before the court that the witnesses did actually witness the *bona fide* signatures of qualified voters whom they personally knew in an aggregate number sufficient to meet the requirement of the statute and by mistake signed their names as witnesses in the wrong place, the court is without power to correct the certificate and to order the filing thereof as a valid petition.

Where a petition is filed in two sections, the fact that no certificate of good character is attached to one of them is an excusable omission that may be cured.

Where some of the signers of the certificate of nomination were women, their failure to sign their Christian names is an excusable omission which is curable upon submission of proper proof by the signers.

Where by the affidavit of an authenticating witness charged with not being registered for the year 1918 it appears that he was in the military service at the time and was registered and voted that year in a military camp, such registration is sufficient under section 123 of the Election Law to qualify him as a witness to a certificate of independent nomination.

APPLICATION for an order under sections 125 and 134 of the Election Law.

Thomas S. Fagan, for petitioner.

George H. Donnan (Andrew J. Nellis, of counsel), for respondents.

Herbert F. Roy, for board of elections.

HINMAN, J. This is an application for an order under sections 125 and 134 of the Election Law,

Supreme Court, September, 1919.          [Vol. 108.·

decreeing the certificate of independent nomination for mayor of the city of Troy, N. Y., of Osman F. Kinloch as the candidate of the Independent Citizens League at the next general election to be insufficient to meet the requirements of section 123 of the Election Law, which provides for such independent certificates of nomination. If the substantial requirements of this section are not satisfied, it is improper to authorize the name of Osman F. Kinloch to be printed upon the ballot at the general election in the city of Troy, N. Y.

Upon this application the court must make such decision and order as justice may require. Election Law, § 125.

The statute requires that such an independent certificate of nomination shall be signed by at least five percentum of the total number of votes cast for governor at the last gubernatorial election in the city of Troy. It is conceded that the number of signatures required in this case was 1,278. It is also conceded that there are 1,394 names of alleged signers upon this petition, being 116 more than the required number. There are, however, certain objections made to large numbers of these signatures, which, if valid objections, would not permit the court to count such signatures in reaching the determination that the required number had signed.

The main objection deals with the authentication of the signatures by witnesses thereof. In making independent nominations and authenticating certificates thereof, section 123 of the Election Law prescribes certain procedure and forms. Two methods of making the certificate are prescribed. One method is for the voter to sign the certificate of independent nomination and add to his signature his place of residence and

take the required oath himself before an officer authorized to administer oaths. The other method is that there shall be a witness to the signature of the voter and that such witness shall see the voter sign, shall hear him declare it to be his intention to support the candidate at the polls and shall thereupon in the presence of the voter sign himself opposite the signature of the voter and in his presence.

The first objection made to the certificate of Dr. Kinloch is that such certificate does not appear to be witnessed as required by law, in that the witness did not sign his name on the same line and opposite the name of each voter's signature, for whom he acted as a witness, but that the witness simply signed his name once for several names of the voters. In other words, the voters subscribed their names, writing them across the page of the certificate, while the witness signed his name up and down the page in a direction perpendicular to the signatures of the voters.

For reasons, which I will detail later, I have reached the conclusion that the method adopted did not conform to the statutory requirements. It is impossible to determine from the certificate itself whether the witness did actually do the things which he was required to do with reference to the requisite number of signers. He was required, among other things, to sign his name opposite the voter's signature. This requirement he did not fulfill, although he states and makes oath that he did this thing. The fact that the witness stated and made oath that he did a thing, which plainly he did not do, requires explanation. Matters of substance cannot be corrected by the court without a particular authorization by the legislature. If, however, the substantial requirements of the

statute were complied with and there was simply a mistake in recording the name of the witness in the proper place and on the proper line, the court would have the power, under the statute which permits it to make an order in the premises such as justice requires, to permit this irregularity to be rectified. Mistakes, omissions and irregularities which do not involve any substantial requirement of the statute but relate to the record merely of the facts required to exist, may be corrected by the court as justice requires such procedure.

What are the substantial things required by the statute to be done in the making of an independent certificate of nomination? The statute requires, *first,* that a qualified voter of the city of Troy should sign and state his residence and declare his intention to support the candidate at the polls; *second,* that a qualified witness should witness the signature of a person known by him to be the person signing and whom he saw sign and who declared to him his intention to support the candidate at the polls; such witness then signing his own name opposite the name of the signer and in his presence.

The primary function of the independent certificate of nomination is to indicate that a certain percentage of the qualified voters of the city of Troy intend to support the candidate.

So far as a witness has failed to clearly indicate upon the face of the petition the signatures witnessed by him, he has to that extent failed to make it clear that the persons signing are qualified voters of the city of Troy who intend to support the candidate at the polls.

As a safeguard against fraud and with the purpose to hold some one responsible under oath for the authen-

Misc.]        Supreme Court, September, 1919.

ticity of the signatures of qualified voters and to assure the good faith of the support of the candidate, the law requires that either the signer shall swear to the facts, or that some one knowing the signer shall make a similar oath as a witness.

And if the witness method is adopted, the law requires that he shall have certain qualifications, namely, that he shall be a man of substance in the community, or at least that he shall have dwelt long enough there to have demonstrated his good character and honesty and who shall have indicated that he is not a mere floater or colonizer by having registered from the same address, or the same election district, for the last two preceding general elections.

Thus, his identity, his character and his political record might be easily detected and traced, and in the event of any falsity in his oath he might be the more readily punished for his crime in the manner permitted by subdivision 4 of section 123 of the Election Law.

It was intended that irresponsible witnesses from other communities, or even from other states, should not be permitted to be imported for the purpose of defrauding the public and other *bona fide* candidates in the preparation of such a petition and then be afforded easy escape from criminal prosecution and imprisonment for at least three months, as fixed by that statute.

Thus the qualifications of the witness are substantial requirements of the statute and cannot be ignored by the court. Nor can the court conclude that justice requires other than that the witness shall clearly indicate on the face of the petition just what signatures he is witnessing. That is the reason why the statute requires his signature " opposite " the signature as

**43**

to which he signs as a witness.  Otherwise he might easily escape criminal prosecution for witnessing a false and fraudulent signature by afterwards maintaining that he did not witness the signature, that his name was not opposite it and was not intended to be included amongst the names of persons as to whom he made oath that he knew them and saw them sign. And he might plausibly and incontestibly claim that other signatures were added after the sheet had left his hands.

In order that the responsibility may be fixed either upon the signer or the witness for the authenticity of the signature, which is clearly the policy of the statute, I can only hold that the certificate in question is defective in so far as the witnesses have failed to sign their names opposite each signature witnessed and on the same line therewith.  There are 1,188 of the signatures which are defective in this respect, thus leaving only 206 unobjectionable signatures, when 1,278 are required.

It seems to me, however, that this is a defect that can be cured, if, in fact, the substantial requirements of the statute are met, namely, that a sufficient number of qualified voters have signed and have either sworn to the necessary facts themselves or have signed in the presence of qualified witnesses who knew them and saw them sign and to whom they declared their intention of supporting the candidate in question at the polls and that the witnesses signed their names in the presence of each such voter.  The affixing of the signature of the witness in a particular place on the certificate was intended only as a guaranty of the good faith of the signature.  If responsibility for the signature can be fixed and the thwarting of criminal prosecution may be avoided by the performance

of that clerical act at this time, the full requirements of the statute would be met and justice would be done.

If, in fact, a signer of the certificate is not a qualified voter entitled to vote for the candidate, or if the witness chosen was not a qualified witness, or if the signer failed to sign in the presence of the witness, or failed to declare to the witness his intention to support the candidate at the polls, or if the witness failed to sign his name in the presence of the signer of the certificate, the court cannot modify or excuse any such fact. The court can only order the correction of the recording of these facts.

Thus, if there were doubt as to the name and address of a signer, because not written legibly enough to be read and identified, the court might permit the real signer to verify his signature. So, if a mistake had been made by a witness in setting forth his qualifications to act as such, proof could be entertained by the court to correct the error. Also, if, in fact, the signer did sign in the presence of the witness, or did declare his intention to support the candidate at the polls, or if the witness did sign his name in the presence of the signer, but the witness failed to state one or more of such facts in his oath, justice would require that the omission of the recording of that fact be corrected by permitting the witness to make oath to that which actually transpired.

So, too, if the witness were led by the character of blank furnished to him and in turn furnished to the candidate by a representative of the board of elections, which was so ruled that the narrow column left for the witness' signature of his name might readily indicate to him that the requirements of the law would be satisfied if he wrote his name lengthwise in the column opposite the names witnessed by him rather than crosswise on the line with each signature wit-

Supreme Court, September, 1919. [Vol. 108.

nessed, it seems to me that fraud could not be presumed in the act, but rather that it would be an excusable omission, which could be cured. To permit him now to place his signature in the proper place to conform with the legal requirement would be simple justice, in that it would be affording an opportunity to him to simply record the facts in which the law is interested by pointing out definitely and certainly the signatures to which his oath as witness related. This gives concrete interpretation to the indefinite expression embraced in the statutory oath required by witnesses to be taken as set forth in the phrase "as to whose signatures deponent has signed as a witness above." Election Law, § 123, subd. 2.

The difficulty with which I am confronted, however, is that there is no proof before me that the witnesses did comply with the matters of substance required by the statute as to all the signatures claimed by the respondents to have been witnessed by them. The method of signature adopted by the witnesses makes it just as impossible for me to assume what names were intended to be authenticated by their oaths for the purposes of this proceeding as it would be in a criminal proceeding to punish for a false oath, to which I have referred as the chief object to be served in having the signatures of the witnesses recorded in the proper place and on the proper lines. It is claimed by the respondents that each signer is a qualified voter of the city of Troy, but there is no proof before me that the persons whose names appear actually signed their names. That is the very question intended by the statute to be proved on the face of the petition. The face of the petition does not prove it because of the method adopted by the witnesses in signing their names. So far as appears from the face of the petition names might have been added which were not

witnessed at all by these witnesses. Names might have been fraudulently placed there by other persons, and if so that fact could not be successfully disproved by anything appearing upon the face of the petition. This is the very thing intended to be prevented by the requirements of the statute as to having the signatures witnessed by a responsible person, who would swear that he knew the signers and who could be punished if he swore falsely.

If it were a fact and proof thereof was submitted to me that these witnesses did actually witness the *bona fide* signatures of qualified voters whom they personally knew in an aggregate number sufficient to meet the requirement of the statute and there was simply an excusable mistake in the recording of the names of the witnesses in the proper place upon the certificate, justice would require that I permit the irregularity to be corrected. As there is no proof before me, however, in relation to the actual persons and the number of them to be affected thereby, I am without power to order the correction and the consequent filing of the certificate as a valid petition upon compliance therewith. Moreover, it is not the province of the court to do so, and justice does not require the authorization of a " fishing expedition " to determine whether the facts would authorize such a correction. Irresponsibility cannot be commended by the court to such an extent. The court cannot act except upon proper proofs as to the compliance with the substantial requirements of the statute. Such proof would consist of the submission of the affidavits of each of the witnesses, to whom objection has been made, stating the names of the signers actually witnessed by them, that the witness knew each of such signers, that the witness saw each of them sign, and heard each of them declare his intention to support the candidate at

Supreme Court, September, 1919. [Vol. 108.

the time of signing the certificate and that he signed his name in the presence of each such signer. Upon this proof the penal provisions of the statute would be satisfied because upon the petition and such an affidavit responsibility could be fixed for criminal prosecution in the event of any false statement of any of the material facts above mentioned.

Other objections to the certificates have been filed. The first of these is that certain witnesses do not possess the qualifications required by law, in that it does not appear in the certificate that they are freeholders in the county, or were for the last preceding five years residents of the county. This objection has been cured by the affidavits of the witnesses that they do possess the qualification of residence. This is a mere excusable omission, which I have held is curable.

Another objection is that the petition failed to contain a certificate of the good character of three witnesses and that the petition was filed in two sections and no certificate of good character was attached to the second section. The two sections, however, must be read together as one petition and the witnesses covered by the character certificate in the first section must be deemed to be covered as to the second section also. The character certificate as to the three witnesses not covered at all in the petition has been supplied before me in the form required by the law, and I hold that to be an excusable omission which can be cured.

Another objection raised is that a number of the alleged signers of the certificate are women who have not signed their christian names. Reference is made by the complainant to the requirement of the law as to the signature of the registry book, which specifically requires the christian names to be given. Election Law, § 155, subd. 1. This requirement was not,

however, embodied in the provisions of the law as to signature upon an independent certificate of nomination. There the law requires only the signatures of the signers, and whatever is capable of identifying the signer is sufficient. Moreover, any error in form, or failure to disclose identity, could be cured as an excusable omission upon submission of the proper proofs by the signer.

Objections are also raised as to the qualification of three witnesses upon the ground that they were not registered from the same address or in the same election district for the last preceding two general elections. It is not clear from the proofs submitted as to whether Alson D. Sickler meets one of these requirements. While the certificate seems to indicate that he registered from the same address in both years, his own affidavit in this proceeding casts doubt upon it, so that I cannot determine whether or not be is a qualified witness without the submission of further proof.

Walter J. Rogers is charged with not having registered for the year 1918, but it appears by his affidavit that he was in the military service at the time and was registered and voted that year in a military camp. I hold that to be a proper registration within the meaning of section 123 of the Election Law, sufficient to qualify him as a witness to an independent certificate of nomination.

Harry O. Dusenbury by his own admission is not a qualified witness, since he states in his affidavit herein that he did not register anywhere for the year 1917. His disqualification invalidates nine signatures.

Therefore, my conclusion must be that insufficient facts have been presented to me in support of this petition to permit me to authorize the certificate to be filed as a valid certificate of independent nomination,

Supreme Court, September, 1919.      [Vol. 108.

at least without the submission to me of the additional proofs referred to herein. If the parties represented here cannot agree upon a time necessary to furnish such proofs, if the required facts are susceptible of proofs, application may be made to me by the respondents at any time for the fixing of a date for such submission upon one day's notice to the other parties.

Ordered accordingly.